# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD NIEBLAS DUARTE,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:15-cv-01860-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 11,15, 18) |

**I.**

**INTRODUCTION**

Plaintiff Edward Nieblas Duarte ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to the Social Security Act. On August 29, 2016, Plaintiff filed a brief in support of remand. On September 28, 2016, in response to Plaintiff's opening brief in support of remand, Defendant filed a motion for summary judgment. On October 20, 2016, Plaintiff filed a reply. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes mellitus, peripheral neuropathy, cerebrovascular disease-

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 9.)

anoxic residual right sided weakness, lumbar disc displacement without myelopathy, arthritis, morbid obesity, and chronic fatigue syndrome. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied and Defendant's motion for summary judgment shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on June 29, 2012, alleging disability beginning May 15, 2012. (AR 178-188.) Plaintiff's application was initially denied on September 11, 2012, and denied upon reconsideration on March 13, 2013. (AR 105-08, 116-120.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on June 12, 2014. (AR 22-68.) On August 4, 2014, the ALJ found that Plaintiff was not disabled.[2] (AR 10-18.) The Appeals Council denied Plaintiff's request for review on October 19, 2015. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff testified at the June 12, 2014 hearing and was represented by counsel.[3] Plaintiff testified that he used his walker when he went somewhere outside of his home and used his cane or held onto the sides of the house and objects while inside his home. (AR 45.) Plaintiff testified that he had been using a walker for three months and his wife assisted him in getting dressed. (AR 44-45.)

Vocational Expert ("VE") Jose Chapparo also testified at the hearing. (AR 56-67.) The first hypothetical that the ALJ posed to the VE was for an individual with the same vocational profile as Plaintiff who would be limited to the medium exertional level in that he or she could only lift and carry up to 50 pounds occasionally and 25 pounds frequently, frequently climb ramps and stairs, but only occasionally climb ladders, ropes or scaffolds, and frequently balance, kneel, crouch, crawl, and stoop. This individual also must avoid workplace hazards such as

---

[2] In a previous hearing decision dated October 27, 1994, found that Plaintiff was not disabled and that Plaintiff retained the residual functional capacity to perform all work except work involving frequent exposure to drugs and alcohol. (AR 10, 69-79.) Here, the ALJ found that the presumption of continuing non-disability does not apply because Plaintiff presented new and material evidence warranting a change in his residual capacity. (AR 10.)

[3] The Court only provides a brief summary of the relevant portions of Plaintiff's hearing testimony.

unprotected heights, uneven or slippery terrain, fast moving machinery, and concentrated exposure to respiratory irritants such as odors, gases, dust, and poor ventilation. (AR 59.) This individual could be a poultry eviscerator. (AR 59.) This individual could also do Plaintiff's other two jobs, yard worker and commercial or institutional cleaner, only as Plaintiff performed them. (AR 59.) This individual could also be a cook helper, dining room attendant, and hospital food service worker. (AR 59-60.)

The second hypothetical that the ALJ posed to the VE was for an individual who would be limited to a light exertional level in that the individual could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and walk up to six hours and sit up to 6 hours, along with the other restrictions of the first hypothetical. (AR 60.) The VE testified that this individual could be a poultry eviscerator and do Plaintiff's other two jobs as he performed them. (AR 60-61.) This individual could also work as a fast food worker, cashier II, and cafe attendant. (AR 61.)

The third hypothetical that the ALJ posed to the VE was for an individual with the same residual functional capacity ("RFC") as the second hypothetical, except this individual would be limited to a sedentary exertional level in that the individual could only lift up to 10 pounds occasionally, stand or walk for approximately two hours, and sit for approximately 6 hours. (AR 61.) The individual could not perform any of Plaintiff's past work. (AR 61.) However, the individual could do sedentary unskilled work such as a microfilming document preparer, stuffer, and telephone quotation clerk. (AR 61-62.)

The fourth hypothetical that the ALJ posed to the VE was for an individual as described in the third hypothetical, except that the person would use an assistive device for ambulation, such as a walker or a cane. (AR 62.) The individual could not perform any of Plaintiff's past work. (AR 62-63.) However, this individual could work as a microfilming document preparer, stuffer, and telephone quotation clerk. (AR 63.)

Plaintiff's attorney then asked the VE whether the individual in the ALJ's first and second hypotheticals could perform the jobs that the ALJ had identified for those hypotheticals if the individual needed an assisted device for standing and walking. (AR 63.) The VE replied that

3

the individual could not do any of those jobs. (AR 63.) Specifically, the VE stated that, assuming that the individual does not have the use of both hands all the time when using the assisted device, the individual would not be able to perform those jobs that he had identified. (AR 63-64.)

The ALJ then inquired whether there would be any other jobs that the individual could perform at the light level if the person required an assistive device, and the VE stated that he had misspoke and that the individual could do cashier II jobs where the individual sits pretty much all day. (AR 64.) The VE also identified ticket seller and paper pattern folder as jobs that the individual could perform. (AR 65.) The VE testified that his answers are consistent with the DOT, except for the cashier II jobs, which there would be about a 50% reduction in the numbers to account for positions where the individual could sit almost all day. (AR 64-67.) The VE testified that "most light jobs could not be done with an assisted device, but these happen to allow sitting." (AR 66.) The VE testified that the ticket seller and paper pattern folder jobs are basically sitting jobs. (AR 67.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since June 29, 2012, the application date.
- Plaintiff has the following severe impairments: diabetes mellitus, peripheral neuropathy, cerebrovascular disease-anoxic residual right-sided weakness, lumbar disc displacement without myelopathy, arthritis, morbid obesity, and chronic fatigue syndrome.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
- After careful consideration of the entire record, Plaintiff has the RFC to perform light work as defined in 20 CFR 416.967(b) except within an 8-hour workday, the claimant can lift and carry up to 20 pounds occasionally and up to 10 pounds

      frequently, stand and walk up to six hours, and sit up to six hours with the use of an assistive device such as a cane or walker for ambulation.  He can frequently climb ramps and stairs, balance, kneel, crouch, crawl, and stoop, and occasionally climb ladders, ropes, or scaffolds.  He must avoid exposure to workplace hazards such as unprotected heights, uneven or slippery terrain, and fast moving machinery and should avoid concentrated exposure to respiratory irritants such as dusts, fumes, gases, odors, and poor ventilation.

- Plaintiff has no past relevant work.
- Plaintiff was born on December 21, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  The VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative light unskilled (SVP 2) occupations such as cashier II, ticket seller, and paper pattern folder.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since June 29, 2012, the date the application was filed.

(AR 10-18.)

## III.
## LEGAL STANDARD

To qualify for supplemental security benefits, a person must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if someone is disabled. 20 C.F.R. § 416.920(b). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the RFC to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. § 416.920(b); Stout v. Commissioner Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff presents two issues in this appeal of the denial of his application for supplemental security income. First, Plaintiff argues that the ALJ erred at step three of the sequential evaluation, because Plaintiff meets or equals Listings 1.02A, 1.04C, 11.04, and/or 11.14.[4] Second, Plaintiff argues that the ALJ erred at step five of the sequential evaluation, because the ALJ's conclusion that Plaintiff is not disabled is contradicted by the VE's testimony limiting Plaintiff to sitting jobs.

### A. The ALJ Properly Determined that Plaintiff Did Not Meet or Equal the Listings at Step Three

Plaintiff argues that he meets or equals Listings 1.02A, 1.04C, 11.04B, and/or 11.14 because he cannot ambulate effectively. Plaintiff contends that the ALJ's finding in the RFC that Plaintiff requires the use of a cane or walker to ambulate establishes that Plaintiff does not have the ability to ambulate effectively, and therefore meets the Listings. Plaintiff also argues that the ALJ's step three findings are insufficient because they are "boilerplate" providing no analysis with regard to the findings and failing to discuss or consider the implication of Plaintiff's use of a cane or walker. Defendant counters that Plaintiff has, at most, only articulated an inability to ambulate, and has failed to articulate how he meets the other requirements for Listings 1.02A, 1.04C, 11.04B, and/or 11.14. In his reply brief, Plaintiff did not present any additional arguments on this issue.

---

[4] Plaintiff also lists Listing 4.04 in heading V.2. of his opening brief. However, in the body of that section of the brief, Plaintiff does not refer to Listing 4.04, and therefore, the Court does not discuss Listing 4.04 in this order.

The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (citations omitted) (emphasis in original).  At step three of the sequential evaluation, Plaintiff bears the burden of demonstrating that his impairment meets or equals a Listing.  Burch, 400 F.3d at 683.

In order for an impairment to meet a Listing, all of the specific findings included in each Listing must be met.  See Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985); Sullivan, 493 U.S. at 531.  Alternatively, a claimant can qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment by presenting "medical findings equal in severity to all the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521 (1990); see also Marcia v. Sullivan, 900 F.2d 172, 175-76 (9th Cir. 1990).

### 1. The ALJ Did Not Provide an Inadequate Analysis at Step Three

As an initial matter, Plaintiff argues that the ALJ erred by merely stating that she considered the Listings at step three rather than providing any analysis.  In her discussion for the third step of the sequential analysis, the ALJ stated:

> Sections 1.02, 1.04 and 4.04, 11.04, 11.14, and 1.00 Q were considered. However, the medical evidence of record as a whole does not demonstrate the claimant presents with a medically determinable impairment which approaching listing level severity.  No physician has opined that the claimant's condition meets or equals any listing and the State Agency medical consultants have opined that it does not.

(AR 13.)

In Marcia, the plaintiff argued that the ALJ's finding at step three was insufficient to show that the ALJ actually considered whether the medical evidence equaled a listed impairment.  900 F.2d at 176.  The ALJ's finding as to medical equivalence was that "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the duration requirements of the Act ...." Marcia, 900 F.2d at 176.  The Ninth Circuit found that this was insufficient and held that "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the

impairments." Id.

Subsequently, in Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001), the Ninth Circuit held that an ALJ's discussion and evaluation of the evidence to support his conclusion was sufficient even if not discussed under the relevant section of the ALJ's report.

The Ninth Circuit has also held that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting Burch, 400 F.3d at 683).

Here, although the ALJ did not discuss the medical evidence in detail at step three before determining Plaintiff did not meet the requirements of Listings 1.02A, 1.04, 11.04, and 11.14, she gave an evaluation of the medical record between steps three and four in support of the RFC determination. (AR 13-17.)  See Lewis, 236 F.3d at 513.  Further, Plaintiff did not present a theory of how his impairments equal Listings 1.02A, 1.04C, 11.04B, and/or 11.14.  Therefore, Plaintiff has not demonstrated that the ALJ erred.  See Kennedy, 738 F.3d at 1178 (quoting Burch, 400 F.3d at 683).  Therefore, the Court finds that the ALJ did not err at step three.

2. The ALJ Did Not Err in Finding that Plaintiff Did Not Meet or Equal Listing 1.02A

Plaintiff argues that the ALJ erred by not finding that he meets or equals Listing 1.02A. Listing 1.02 is major dysfunction of a joint(s) due to any cause.  An individual meets paragraph "A" of Listing 1.02 when he or she has:

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.02A, 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Plaintiff does not argue or point to any evidence of a gross anatomical deformity and chronic joint pain and stiffness.  Plaintiff argues that he has the inability to ambulate effectively,

9

which is defined as:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00 J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05 C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

Listing 1.00B2b(1), 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

> Whereas, to ambulate effectively,
>
> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B2b(2), 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

While it is arguable that Plaintiff does not have the ability to ambulate effectively, Plaintiff does not explain how he meets the other requirements for Listing 1.02A. Plaintiff does not identify any evidence that the ALJ failed to consider or improperly rejected that would establish that Claimant meets or equals the impairments listed in Listing 1.02A other than an inability to ambulate effectively. Plaintiff only makes a general argument for all of the challenged Listings that the underlying medical evidence demonstrates that he suffers from significant gait dysfunction related to his cerebrovascular accident ("CVA").

Plaintiff has not established that he had a major dysfunction of a joint characterized by a gross anatomical deformity and chronic joint pain involving a weight-bearing joint to meet Listing 1.02A. Plaintiff also has not shown that he has conditions that are equal to Listing 1.02A. The Court notes that the ALJ found that Plaintiff's "physical examinations further showed that he had good lower extremity strength" and "[h]e had full ranges of motion of all his extremities with no bone or joint tenderness." (AR 15.) During examinations on July 12, 2012,

September 7, 2012, September 21, 2012, November 27, 2012, December 3, 2012, December 5, 2012, January 3, 2013, and March 24, 2014, Plaintiff had a full range of motion in all extremities and no bone or joint tenderness. (AR 323, 362, 364, 367, 369, 372, 374, 393.)

Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or equal Listing 1.02A. Accordingly, the Court finds that the ALJ did not err in finding that the medical evidence failed to establish that Plaintiff's impairments, alone or in combination, met or equaled Listing 1.02A.

3. <u>The ALJ Did Not Err in Finding that Plaintiff Did Not Meet or Equal Listing 1.04C</u>

Plaintiff argues that the ALJ erred in finding that he did not meet or equal Listing 1.04C. Listing 1.04 requires an individual to show a disorder of the spine such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture [ ], resulting in a compromise of a nerve root (including the cauda equina) or the spinal cord." Paragraph "C" of Listing 1.04 also requires an individual to have "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b."[5]

Plaintiff does not show how he meets or equals Listing 1.04C other than, arguably, an inability to ambulate effectively. As discussed above, Plaintiff only argues that the underlying medical evidence demonstrates that he suffers from significant gait dysfunction related to his CVA. The ALJ determined at step two that Plaintiff has lumbar disc displacement without myelopathy. (AR 12.) Plaintiff does not challenge this finding. Plaintiff does not show how he has the required lumbar spinal stenosis resulting in pseudoclaudication, let alone spinal stenosis resulting in pseudoclaudication established by appropriate medically acceptable imaging.

---

[5] Pseudoclaudication may result from lumbar spinal stenosis. It "is manifested as pain and weakness, and may impair ambulation. Symptoms are usually bilateral, in the low back, buttocks, or thighs, although some individuals may experience only leg pain and, in a few cases, the leg pain may be unilateral. The pain generally does not follow a particular neuro-anatomical distribution ... is often of a dull, aching quality, which may be described as 'discomfort' or an 'unpleasant sensation,' or may be of even greater severity, usually in the low back and radiating into the buttocks region bilaterally." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00K3.

Plaintiff also has not presented any evidence that he has an equally severe condition to equal Listing 1.04C.

When Plaintiff went to the emergency room in June 2012, Plaintiff's spine was unremarkable during a physical examination, a medical provider noted no musculoskeletal issues, and there was a notation of no back pain in Plaintiff's final report. (AR 260, 263, 267.) In fact, the final report noted that Plaintiff had normal range of motion, normal strength, no tenderness, and no deformity for the musculoskeletal system. (AR 267-68.)

The only positive objective findings for Plaintiff's back from Plaintiff's treating doctor are: (1) October 11, 2011, December 12, 2011 and February 23, 2012 notations that Plaintiff had limited range of motion of the lower spine with forward flexion; (2) a notation in the February 23, 2012 report that Plaintiff used a cane; (3) and January 3, 2013 and March 18, 2013 findings that Plaintiff had lower back pain. (AR 341, 344, 350, 353, 362, 431.)

Plaintiff did physical therapy in August and September 2012 and again from March 2014 through May 2014. (AR 15.) During the time he attended his physical therapy sessions in 2012, Plaintiff had a full range of motion in his knees and nearly full range of motion in his hips. (381, 383.) When Plaintiff was discharged from physical therapy in September 2012, his therapist noted that he had made good progress toward his goals, had increased strength in his lower extremities, had a little more energy, and was independent with his home exercise program. (AR 384.) When Plaintiff was discharged from physical therapy in 2014, he had 9/10 pain in his right leg, 8/10 pain in his back, normal range of motion in his extremities, 5/5 strength in his upper extremities and lower left extremity, and a "4+/5" in his lower right extremity. (AR 434.) Although Plaintiff had minimal improvement in the level of pain in his lower back, he felt stronger on his legs and in his core muscle group, which allowed him to participate more with walking activities. (AR 434.)

Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or equal Listings 1.04C. Accordingly, the Court finds that the ALJ did not err in finding that the medical evidence failed to establish that Plaintiff's impairments, alone or in combination, met or equaled Listing 1.04C.

4. <u>The ALJ Did Not Err in Finding that Plaintiff Did Not Meet or Equal Listing 11.04B</u>

Listing 11.04B is a vascular insult to the brain, characterized by "[d]isorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult."

Plaintiff does not show how he meets Listing 11.04B other than, arguably, an inability to ambulate effectively. Plaintiff has failed to show that he has a central nervous system vascular accident required to meet Listing 11.04B. Plaintiff states in his opening brief that the underlying medical evidence demonstrates that he suffers from significant gait dysfunction related to his CVA.

However, the ALJ found that Plaintiff's claims of a cerebrovascular accident were not supported by the negative MRI and MRA of the head. (AR 15.) Plaintiff does not challenge the ALJ's finding regarding cerebrovascular accident.[6] When Plaintiff went to the emergency room in June 2012, the initial diagnosis was acute ataxia and dizziness, and there was the possibility of a stroke noted. (AR 257-60.) However, after testing, at the time Plaintiff was discharged from the hospital, the final diagnosis was not a stroke, but acute ataxia, peripheral neuropathy, diabetes mellitus, hypertension, and mild hypokalemia. (AR 257.)

Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or equal Listings 11.04B. Accordingly, the Court finds that the ALJ did not err in finding that the medical evidence failed to establish that Plaintiff's impairments, alone or in combination, met or equaled Listing 11.04B.

5. <u>The ALJ Did Not Err in Finding that Plaintiff Did Not Meet or Equal Listing 11.14</u>

Based on Plaintiff's opening brief, it appears that he argues that he meets Listing 11.14A. Listing 11.14 is peripheral neuropathy, characterized by A or B:

---

[6] Cerebrovascular accident is also known as a stroke. <u>See</u> Cerebrovascular Accident (Stroke), PubMed Health, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024234/ (last visited Jan. 11, 2017.)

13

    A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or

    B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:

    1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    2. Interacting with others (see 11.00G3b(ii)); or
    3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    4. Adapting or managing oneself (see 11.00G3b(iv)).

Disorganization of motor function is defined as "interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities...By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00D1.

Here, Plaintiff has not shown that he meets all of the requirements for Listing 11.14A. The ALJ found that Plaintiff had the severe impairment of peripheral neuropathy. However, a claimant must also have significant and persistent disorganization of motor function in two extremities to meet Listing 11.14A. Plaintiff does not point to any evidence, and the record does not contain any evidence, that Plaintiff has significant and persistent disorganization of motor function in two extremities. Plaintiff only alleges pain and difficulty using his right leg. Plaintiff does not allege any disorganization of motor function in another extremity. Therefore, the Court finds that Plaintiff has failed to show that he meets Listing 11.14A. The Court finds that Plaintiff has also failed to show that he equals the severity of the conditions in Listing 11.14A.[7]

Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or equal Listings 11.14. Accordingly, the Court finds that the ALJ did not err in finding that the medical evidence failed to establish that Plaintiff's impairments, alone or in combination, met or equaled Listing 11.14.

/ / /

/ / /

---

[7] Although it appears from Plaintiff's opening brief that he is not arguing that he meets or equals Listing 11.14B, the Court notes that there is no evidence in the record that Plaintiff has a marked limitation in the areas identified in Listing 11.14B.

**B.    The ALJ Did Not Err in Finding that Plaintiff is Not Limited to Sedentary Jobs**

Plaintiff argues that the VE's testimony implies that Plaintiff would not be able to perform light jobs while standing or walking since at least one of his hands would be using a cane or walker.  Therefore, Plaintiff argues that he actually only could do jobs where he is seated, which is a sedentary job, and not light.  Defendant contends that the regulations contemplate that a job may be considered light work even if it does not involve much walking. See 20 C.F.R. § 416.967(a); Avilez v. Colvin, No. EDCV 14-0732-JPR, 2015 WL 1966916, at *6 (C.D. Cal. Apr. 30, 2015) ("Although most light work requires more standing and walking than the ALJ found plaintiff able to perform, some light-work positions require no more than two hours of standing and walking.").  In his reply, Plaintiff argues that the claimant's RFC and how the job in question is actually performed is what controls the outcome of the case.  Plaintiff admits that there is a subgroup of jobs within the light exertional level that involve some pushing and pulling of arm or leg controls.  However, Plaintiff argues that the VE never testified that the jobs at issue in this case met that definition of the small subgroup of light work jobs involving some pushing and pulling of arm or leg controls.

While the burden is on the claimant to prove that they are disabled at steps one through four, at step five the burden shifts to the Commissioner to show that there are a significant number of jobs in the national community that the claimant can perform.  See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1222 (9th Cir. 2009).  The Commissioner can use the testimony of a vocational expert or refer to the Medical Vocational Guidelines ("the grids") at 20 C.F.R. pt. 404, subpt. P, app. 2 when determining whether there is other work in significant numbers in the national economy that the claimant can perform.  See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999) ("The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment.")

Plaintiff argues that a disabled finding was mandated by the grids if Plaintiff was limited to sedentary work, given his age, education, and work experience.  On the date the application

was filed, Plaintiff was 51 years old and the ALJ found that he was closely approaching advanced age. (AR 27.) Plaintiff's vocational factors include that he is an individual closely approaching advanced age with a limited education and no past relevant work experience. A claimant in Plaintiff's position who is limited to sedentary work is deemed disabled according to the grids. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.09. Therefore, this is a dispositive issue.

However, Plaintiff's argument is flawed because Plaintiff was not limited to sedentary work. Sedentary work is defined as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). Light work, in contrast, is defined as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 416.967(b). The ALJ determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand walk up to 6 hours, and sit up to 6 hours with the use of an assistive device such as a cane or walker for ambulation. (AR 13.) Accordingly, Plaintiff was theoretically capable of performing some subset of light work, as opposed to being limited entirely to sedentary work.

To the extent that Plaintiff's argument is that the ALJ should have found that the upper category, light work, was so reduced that it was essentially equivalent to the lower category, sedentary work, this argument fails. Defendant argues that the grids did not account for all of Plaintiff's limitations because he required the use of an assistive device. Here, Plaintiff suffered from both exertional and nonexertional limitations, so the ALJ had to determine whether the grids mandate a finding of disabled based on Plaintiff's exertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989.) Plaintiff's exertional limitations fall between the light and sedentary exertional levels, so the grids were not determinative of whether Plaintiff was disabled and further analysis was necessary. See Cooper, 880 F.2d at 1155.

To the extent that Plaintiff's argument is that the ALJ erred by finding that Plaintiff could perform light work because he had to use an assistive device such as a cane or walker for ambulation, Plaintiff's argument fails. The light RFC takes into account not only Plaintiff's

ability to stand and walk, but also Plaintiff's abilities to lift objects.  Further, Plaintiff is able to meet the exertional requirements of light work for standing and walking, because he is able to stand and walk for six hours, even though he has to use a cane or walker.  The fact that he uses a cane or walker may erode some of the jobs in the light exertional work, but as discussed above, that just meant that the grids were not determinative and that further analysis was necessary.  See Cooper, 880 F.2d at 1155.

Therefore, it was proper for the ALJ to rely on the testimony of the VE before determining whether Plaintiff was disabled.  See Tackett, 180 F.3d at 1101.  Accordingly, the Court finds substantial evidence supports the ALJ's finding that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## V.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED and Defendant's motion for summary judgment is GRANTED.  The Clerk of the Court is directed to CLOSE this action and enter judgment in favor of Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **February 6, 2017**

UNITED STATES MAGISTRATE JUDGE